Statement of Facts.


. PHILA. TRUST CO. v. PHILA. & R. C. & I. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF PHILADELPHIA COUNTY.

Argued January 8, 1891—Decided January 26, 1891.
[To be reported.]

1. Although, in order that a contract may be legally binding upon an estate under the management of several trustees, it is necessary that there
be a joint exercise of judgment by all in entering into it, yet it does not
follow that if such joint action is not clearly shown equity will relieve
from it, in the face of a contract made by one of the trustees, which if
valid would bar such relief.                    .

2. The trustees might go into a court of law and enforce their legal rights,
and nothing less than a strict joint agreement of all would be a defence;
but, when they ask a chancellor to help them, he will look into all the
circumstances to see if equity requires him to do so, and, if the circumstances be such as would absolutely bar parties acting in their own right,
he may refuse to give affirmative aid.

(a) One of three trustees made an agreement that the defendant should
hold certain bonds belonging to the trust-estate, as security for the payment of certain moneys to the defendant by the trustees. On the faith
of this agreement, the defendant paid to said trustee certain other moneys of greater amount. The other two trustees knew of the arrangement, made no objection to it, and participated in the disposition of the
money paid by the defendant.

3. Upon these facts, a bill filed by the successor of the trustees, to compel the defendant to deliver up the bonds, alleging that as matter of
law the moneys for the security of which the defendant held them,
were really not due from the trust-estate, and that said agreement was
invalid, was dismissed for want of equity, and also because, by an unexplained delay of more than thirteen years in filing the bill the plaintiff was guilty of laches.


Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 410 January Term 1890, Sup. Ct.; court below, No. 887
June Term 1886, C. P. No. 2, in Equity.

On August 4, 1886, the Philadelphia Trust, Safe Deposit &
Insurance Company, administrator d. b. n., c. t. a., of the estate
of William Richardson, deceased, and trustee under the will

of said decedent, filed a bill in equity against the Philadelphia & Reading Coal & Iron Company, praying for a decree that the defendant deliver to the plaintiff certain mortgage bonds, made by the defendant, eighteen in number, and of the denomination of $1,000 each, averred to be the property of the estate of the plaintiff's testator, and to be wrongfully detained by the defendant.

After answer and issue joined, the cause was referred to *Mr. George M. Dallas*, as examiner and master, who found in substance the following facts:

On January 19, 1872, George J. Richardson, John B. Okie, and Thomas Webster, surviving and continuing executors and trustees under the will of William Richardson, deceased, in the exercise of powers conferred upon them by said will, agreed, by sealed articles of agreement, to sell and convey certain coal lands, in fee-simple, subject to a mortgage thereon for $55,000, held by the executors of James Dundas, deceased, unto the defendant, the Philadelphia & Reading Coal & Iron Company, for the sum of $420,000. Said lands were then in the possession of John Lucas & Co., tenants under a mining lease, and the property was to be conveyed to the defendant subject to said lease. The purchase money was to be paid in seven per cent mortgage bonds, guaranteed by the Philadelphia & Reading Railroad Company, and payable in twenty years from January 1, 1872; and the contract contained the following clause:

"7. This agreement shall bear date as of the first day of January, A. D. 1872, so that all the rents and profits of the said land shall be paid and belong to the said party of the second part, and interest on the said consideration price from said time shall be allowed to the said party of the first part."

The coal lands were conveyed to the defendant, in pursuance of said contract, by a deed dated January 1, 1872, acknowledged by all the trustees on July 19, 1872, and delivered on July 24, 1872. Contemporaneously with the delivery of the deed, John B. Okie, one of the trustees, received from the defendant, on account of the consideration, bonds to the amount of $402,000, and interest on the whole $420,000 from January 1, to July 1, 1872, and executed an agreement, dated July 24, 1872, purporting to be between the defendant company, party of the first part, and Messrs. Richardson, Okie and Webster,

Master's Report.

executors and trustees, as parties of the second part. This agreement recited the contract of January 19, 1872; stated that by the provisions thereof the rents and profits of the lands from January 1, 1872, were to be paid and belong to the coal and iron company, and interest on the consideration price, at seven per cent, from the same date, was to be paid to the trustees; recited the payment of such interest to July 1, 1872, and the non-payment to the coal and iron company of the rents of said land for the months of January to June inclusive, amounting to $17,308.69, " which said amount is due by the said executors to the said Philadelphia & Reading Coal & Iron Company." It then stipulated that the defendant should retain eighteen of the bonds, for $1,000 each, as security for the payment of said rents to it, by the executors, the company agreeing to endeavor to collect the rents from the tenants under the advice of the counsel of the executors and trustees. Okie's co-trustees never joined in executing this agreement of July 24, 1872. The rents therein referred to were never paid by Lucas & Co., the tenants, and the trustees never paid the amount of them to the defendant. The defendant, claiming the right to do so, still retained the eighteen bonds, which were the subject of this bill, as security for the payment of said rents to it.

In November, 1872, Messrs. Webster, Richardson and Okie ceased to be executors and trustees under the will of the decedent, and were succeeded in the administration of the estate and as trustees by the plaintiff.

The master reported further findings of fact and of law, in part, as follows: *

The learned counsel of the respective parties have, in argument, submitted different views with respect to the construction of the agreement of January 19, 1872, and this difference is first to be considered and passed upon; for, if that agreement gave to the defendant the right to retain and hold the eighteen bonds in question, then, of course, plaintiff's case could not be maintained.

Upon behalf of the defendant it was contended that the

---

* Some additional facts are stated in the opinion of the Supreme Court, infra.

agreement of January 19, 1872, was wholly executory, and that upon delivery of the deed, and not before, the contract to convey and to purchase became an executed one; that the agreement did not operate as an assignment of the rental or royalties to the defendant, but that, upon delivery of the deed, a settlement was to be made in which the vendors were themselves to pay, or be charged with, the rental from January 1, 1872, and the vendee with the interest upon the bonds from the same date; in other words, that the vendee was not to pay the interest upon the bonds, and look to the mining tenants for the rents. In enforcement of this contention, it was insisted that Lucas & Co. remained the tenants of the vendors until delivery of the deed, and that the vendee could not compel payment from the tenants before such delivery, unless, perhaps, by invocation of equity, to require action by or in the names of the vendors, a course which the agreement, it was argued, did not indicate as in contemplation, and which the parties could not have intended.

I think that this position of the defendant, though, of course, intelligently assumed and ably presented, is not sound. Although the agreement was *to* convey and *to* purchase, so that the deed was to be delivered and the consideration paid in the future, yet it was expressly made to bear date as of the first day of January, 1872, "so that all the rents and profits of the said land shall be paid and belong to the said party of the second part (defendant), and interest on the said consideration price from said time shall be allowed to the said party of the first part" (plaintiffs). As it seems to me, this meant that when the deed, though to be made in the future, should be delivered, it would take effect as of January 1, 1872, and that accordingly, because of defendant's ownership of the tract as as of that date, the rents would issue thereout to it and belong and be payable to it as landlord, just as "from said time" interest on the consideration, because of the same circumstance, would be allowable to the vendors. The rights of neither of the parties were made dependent upon anything to occur in the future, but were fixed as of a past date. As of that date, the rents belonged to the vendee, and I perceive no ground for holding that the vendors guaranteed that they would be paid. Other provisions of the agreement also tend

to support the view that the purchase and sale were to be treated as consummated upon January 1, 1872. The bonds in which the price was to be paid were to run from that date. The vendee assumed the Dundas mortgage from that date, and expressly agreed to take subject to then subsisting leases; the only lease being, so far as appears, this lease to Lucas & Co.

I report as my opinion, that by the agreement of January 19, 1872, the claim of the defendant to withhold and retain the eighteen bonds in question, as security for the unpaid royalties, is not sustained.

The writing of July 24, 1872 . . . . . if valid and binding upon the estate of William Richardson, would be conclusive of this case, and require its decision in favor of the defendant. It is, however, asserted, upon behalf of the plaintiff, that this document is not a valid and binding agreement, because it was executed by only one of the trustees. This point, considered apart from and without reference to any of the circumstances alleged by the defendant, and claimed upon its behalf to make this case an exception from the general rule, must, in my opinion, be sustained. Whether or not the fact that the agreement is expressly stated to be that of three persons, only one of whom executed it, would be conclusive against its validity as the contract of any of them, need not be decided. I base the opinion I have expressed upon the principle that "when the administration of a trust is vested in co-trustees, they all form but one collective trustee. They must, therefore, execute the duties of the office in their joint capacity, . . . . in all cases depending on the discretion and judgment of the trustees:" Vandever's App., 8 W. & S. 409. Having already reached the conclusion that the agreement of January was such that the supplementary writing of July cannot be considered as merely confirmatory of it, the instrument of later date must be taken to involve the exercise of discretion and judgment, and therefore its execution by all the trustees was requisite to render it binding upon the trust-estate, unless, as I have said, there are some circumstances to make the general rule inapplicable to it. The defendant insists that there are such circumstances, viz.:

1. That the two trustees, who did not sign, had previously orally agreed to the retention of the bonds, precisely as the writing provided that they should be retained.

2. That, even if Webster and Richardson had not agreed beforehand, they subsequently assented to and ratified what Okie had done.

3. That the present trustee, the Philadelphia trust company, recognized and ratified the retention of the bonds.

· These three propositions may be consolidated and re-stated as, in effect, an allegation that, although the writing of July 24, 1872, was executed by only one of the then three trustees, the same thing had, by parol, been previously agreed to by the other two of them, and that the writing was subsequently ratified by those others, and also by the present substituted trustee. I am of opinion, with respect to this contention, that if acquiescence or consent to the contract by all the trustees, coupled with an exercise of their own judgment therein, has been shown, it is valid, if no sufficient ground other than its non-execution by two of the trustees exists for holding it to be invalid. See Vandever's App., supra, and Bohlen's Est., 75 Pa. 304. This brings me to a consideration of the facts upon this point.

1. As to the alleged prior acquiescence of Messrs. Webster and Richardson. [—After discussing the testimony:]    I think it incumbent upon me to conclude that the allegation of agreement upon their part has not been established; and, accordingly, I find as a fact that the two then trustees who did not execute the writing of July 24, 1872, or either of them, had previously assented to or authorized its execution, or had agreed, by parol, that the bonds should be retained as security for the unpaid royalties.

2. Did Mr. Richardson and Mr. Webster subsequently ratify the writing of July 24, 1872? Upon full consideration of the evidence, especially the testimony of Mr. Okie, of Mr. Webster, and of Mr. Richardson, I believe that both Mr. Richardson and Mr. Webster knew of the writing which Mr. Okie had signed, and its purport, a few days after its date. Certainly, if they did not, in fact, know it, their position as joint trustees with Mr. Okie required, in view of facts which they certainly did know, that they should have made prompt inquiry, which, if made, must have resulted in their immediately acquiring the information. But knowledge is one thing, ratification another. There is no evidence whatever of the latter, and it cannot, in

my opinion, be inferred from the former.  The subject was one calling for the exercise of judgment and discretion; and it is, I think, impossible to find that Mr. Richardson or Mr. Webster, in the exercise of these, gave their assent and approval to the writing in question.  Proof of such ratification on their part should, to avail the defendant, be, I think, clear and satisfactory.  It is not enough that they knew, or should have known, what Mr. Okie had done, and did not notify to the defendant their dissent therefrom.  The right set up by the defendant depends for its maintenance upon the agreement, in some form, of all the trustees, and this has not been shown.

In addition to this, no consideration appears for this supposed surrender of the property of the trust, by those whose duty it was to demand and hold it.  The only thing in the nature of consideration which is suggested by the writing itself, is the recital that $17,308.69 of rents was " due by the said executors," which was not true; the statement that such rent was so due being based upon a construction of the first agreement which was not correct, and to which Mr. Richardson and Mr. Webster have both testified they never assented.  Neither did they agree to give away any of the bonds which belonged to the trust-estate; and, if they had, I think such agreement would not have been binding.

In accordance with the foregoing, I find and report, as matter of fact and of law, that Mr. Webster and Mr. Richardson did not ratify or assent to the writing of July 24, 1872, and that if they had done so it would not, in view of my construction and understanding of the original agreement, have been binding upon the estate.

3.—After discussing the third point, to wit, the allegation that the present trustee, the plaintiff, had recognized and ratified the retention of the bonds by the defendant, and reporting that in his judgment there was nothing to warrant a finding that the present trustee had acquiesced in the claim of the defendant to hold the bonds by virtue of either of the prior agreements, the master continued :

I report as my opinion, upon the facts as I have found them, that the writing of July 24, 1872, even in connection with the circumstances alleged and set up to support it, is not a valid and binding agreement, and does not entitle the defendant to retain and hold the bonds in question.

Master's Report.

It has been further contended that "the defendant has a perfect legal title to the $18,000 of bonds, by writing executed by all the trustees." This refers to the fact, which is beyond question, that in January, 1872, the then trustees executed a writing directing the delivery of the bonds under the contract of sale, to C. & H. Borie, and upon July 24, 1872, also executed an assignment to C. & H. Borie of four hundred and twenty bonds, inclusive of these eighteen bonds; and that the said C. & H. Borie, by their duly authorized attorney, did, upon June 21, 1873, assign the said eighteen bonds to the defendant. But the purpose for which these bonds were transferred to C. & H. Borie so plainly appears, that it would be superfluous to refer to the evidence of it in detail. They were assigned as collateral security for notes of the trustees. It is equally beyond question that the defendant knew this; and there is not any evidence which would support a finding that the trustees assented or agreed that the transfer from C. & H. Borie, by their attorney, should operate to pass the title to the bonds to the coal and iron company as security for the unpaid rental of Lucas & Co. The notes had been paid. C. & H. Borie had, therefore, no right to longer retain the bonds; and upon the facts as I have found them, it follows that the defendant could not and did not acquire such right by virtue of C. & H. Borie's assignment to it. . . . .

I report that, in my opinion, the defendant's claim of right to retain these eighteen bonds, by virtue of title derived through C. & H. Borie, and the circumstances connected therewith, has not been sustained.

No jurisdictional question has been raised; and, as the bill avers and the answer admits that these bonds have a peculiar value, and are not readily obtainable in the market, I am of opinion that this suit is cognizable in equity.

—The master thereupon recommended a decree that the defendant deliver to the plaintiff the eighteen bonds described in the bill, and interest thereon at seven per cent from July 1, 1872, and that the defendant pay the costs.

Exceptions to the report of the master, filed with and overruled by him, having been argued before the court in banc, an order was entered, without opinion filed, dismissing the exceptions, confirming the report, and decreeing as recommended

Arguments.

by the master. Thereupon, the defendant took this appeal, specifying inter alia that the court erred in dismissing its exceptions filed to the action of the master,

2. In finding that the agreement of January 19, 1872, did not give the defendant the right to retain and hold the eighteen bonds in question.

3. In not finding that the two trustees, who did not sign the writing of July 24, 1872, had previously assented to the agreement embodied therein.

4. In not finding that Webster and Richardson subsequently assented to and ratified the agreement of July 24, 1872.

5. In finding that the writing of July 24, 1872, was not a valid and binding agreement.

9. In not finding the plaintiff to be barred by laches from the equitable relief sought.

13. In finding the suit to be cognizable in equity.

*Mr. George F. Baer* and *Mr. Thomas Hart, Jr.*, for the appellant:

Counsel cited: (1) As to laches: Russell v. Baughman, 94 Pa. 400; McGrew v. Foster, 113 Pa. 642; Patterson v. Martz, 8 W. 374; Penna. R. Co.'s App., 125 Pa. 189; Todd's App., 24 Pa. 429; St. Andrew's Church's App., 67 Pa. 519; Ashhurst's App., 60 Pa. 290; Evans's App., 81 Pa. 278; Bell v. Railroad Co., 1 Gr. 105. (2) On the question whether the agreement of January 19, 1872, was an executory or an executed contract: Gray v. Packer, 4 W. & S. 18; Bruner's App., 57 Pa. 46; Stewart v. Lang, 37 Pa. 201; Williams v. Bentley, 27 Pa. 294; Ogden v. Brown, 33 Pa. 247.

*Mr. John G. Johnson* (with him *Mr. Frank B. Okie*), for the appellee:

It is true that under certain circumstances equity will refuse its relief, though the statute of limitations has not run. The only thing, however, which justifies, or has ever been thought to justify such refusal, is the existence of a state of affairs prejudicial to the defendant, or operating to mislead him, and brought about by such a failure of the plaintiff to proceed, as amounted to a declaration that he did not intend to do so. This is the doctrine of all the cases cited on this point by the appellant.

OPINION, MR. JUSTICE WILLIAMS:

The facts of this case are not really in dispute.    Both parties agree to them substantially as reported by the master, and the only contention is over the inferences of law proper to be drawn from them.

The complainants' claim to relief rests upon the single ground of the insufficiency of an agreement of one of three trustees, though it be in writing and under seal, to bind the estate.    It is conceded that if the three parties had not been trustees, but had been acting in their individual rights, they would have been bound.    The master finds that the two who did not sign the agreement had immediate knowledge of it, acquiesced in it, and accepted the benefits of the payment of cash made upon it.    No writing was required.    If all three of the trustees had been present, and had agreed, had delivered the deed, accepted the four hundred and two bonds and the check for interest, as a present settlement in full, leaving the other eighteen bonds in the hands of the coal company as security for the uncollected rents, or if, not being present, they had subsequently ratified or approved the settlement, then the estate admittedly would have been bound.    The master finds such knowledge, acquiescence, and ratification as would have bound the parties in their individual capacities, but he finds as matter of law that this was not enough to bind them when acting as trustees.    He says: " I believe that both Mr. Richardson and Mr. Webster knew of the writing which Mr. Okie had signed, and its purport, a few days after its date. . . . . But knowledge is one thing, ratification another.    There is no evidence whatever of the latter, and it cannot, in my opinion, be inferred from the former.    The subject was one calling for the exercise of judgment and discretion; and it is impossible to find that Mr. Richardson or Mr. Webster, in the exercise of these, gave their assent and approval to the writing in question. Proof of such ratification on their part should, to avail the defendant, be, I think, clear and satisfactory."

It is thus seen that the complainants' case rests, even in the favorable view taken by the master, on the single point that the affirmative exercise of their individual judgment and discretion, by the two trustees, was not clearly shown.    It may be conceded that as an element of a valid legal contract the

joint exercise of judgment by all the trustees is essential. The learned master has correctly stated the law in that respect. But it does not follow that a court of equity will necessarily afford relief where such joint action is not clearly shown. The trustees may go into a court of law and enforce their legal rights, and nothing but a strict joint agreement of all will be a defence. But when they ask a chancellor to help them, he will look into all the circumstances to see if equity requires him to do so. In the present case, the trustees executed the agreement of sale on January 19th, and it was to be operative as of January 1st, but the deed was not delivered until July 24th. The cause of the delay is not shown and is not material, but it has a bearing on the actions of the parties, in this, that the item of rents had in the meantime reached a sum of importance. The trustees were in urgent need of money. It is admitted that they had a large number of notes out, and were indebted to Messrs. Borie in such an amount that they almost immediately transferred the whole four hundred and odd thousand dollars of bonds to them as security. Under these circumstances, the trustees appointed (that is the word Okie uses), one of their number to make the settlement, and he thereupon delivered the deed, received a check for eighteen thousand and odd dollars, the four hundred and two bonds, and signed and sealed a formal agreement that the remaining eighteen bonds should be held by the company as security for the uncollected rent. The cash received by check for interest was rather more than the face value of the eighteen bonds, and the testimony is undisputed that, without the agreement as to the retention of these bonds, this money would not have been paid. The counsel of the trustees was present at the settlement, and the two absent trustees knew of it immediately afterwards. They not only made no objection, but they participated in the disposition and benefit of the cash, with knowledge of the terms upon which it had been obtained; joined in a formal transfer of all the bonds to Borie & Co., and knew that Borie & Co. re-transferred the eighteen bonds in question to the coal and iron company, to be retained under the agreement of July 24th. The circumstances were such as would absolutely bar parties acting in their own right, and though they might not, as matter of law, constitute a contract binding on trustees, they do

Opinion of the Court.

show such a want of equity that a chancellor should not give them affirmative aid.

So far we have considered the case without reference to the question of delay. The facts with regard to the original trustees have already been stated. They took place in July, 1872. The complainants, the present trustees, were appointed in November of the same year. They came into the responsible management of a large estate, heavily indebted, and whose previous trustees had been discharged because unable to agree or to get along together. The complainants, therefore, had more than usual reason to look carefully into the condition of the assets, and, in addition to this, Webster says he called their attention especially to these bonds detained by the coal and iron company. Yet they made no move until 1877, when a suit was brought which was subsequently abandoned, and this bill was not filed until 1886. For this delay of more than thirteen years no excuse has been shown. During all this time the trustees had knowledge of all the facts and circumstances now in their possession, and with such knowledge acquiesced in the action of the coal and iron company. No concealment on the part of the company or ignorance on their own part is alleged in the bill, and the jurisdiction in equity, as the complainants have stated their own case, must rest on the narrow basis afforded by the averment in the fifth paragraph of the bill, that the bonds have a peculiar value and are not readily obtainable in the market. The learned master saw and stated this very clearly in his report. The bill would therefore have been demurrable on the ground that it presented a case for which the law provided a natural and adequate remedy, had this paragraph not been inserted; and, with it, the fact still remains that it states a cause of action in trover, which would have been barred in a court of law by less than one half the delay shown here. It would be a strange anomaly if laches that would conclude a plaintiff, at law, would be disregarded in equity, without the slightest explanation or excuse being offered for the consideration of a chancellor. It is not necessary to cite authorities for this principle, but we may refer to Todd's App., 24 Pa. 429; St. Andrew's Church's App., 67 Pa. 512, 519; and Penn. R. Co.'s App., 125 Pa. 189, as instances in

Syllabus.

which it has been applied under circumstances analogous to the present.

It is not necessary to notice the assignments of error in detail, nor do we express any opinion upon the other questions raised in the case. All we decide is that relief in the present form must be denied, for want of equity in complainants' case, and for laches.

Decree reversed, and bill dismissed, with costs.