## BLUM et al. v. WILLIAM GOLDMAN THEATRES, Inc.

### No. 9318.

Circuit Court of Appeals, Third Circuit.

Argued May 5, 1947.

Decided Oct. 31, 1947.

As Amended Nov. 24, 1947.

Rehearing Denied Dec. 2, 1947.

Joseph S. Clark, Jr., of Philadelphia, Pa. (Theodore Voorhees and Barnes, Dechert, Price, Smith & Clark, all of Philadelphia, Pa., on the brief), for appellant.

David H. H. Felix and Morris Wolf, both of Philadelphia, Pa. (Felix & Felix, of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

This appeal is taken from a decree of the court below which ordered defendant, hereinafter called "Goldman," (a) to convey to plaintiffs Frank and Sara J. Blum, hereinafter collectively designated as "Blum," two tracts of land, with buildings and improvements thereon, in Upper Darby, Pennsylvania; (b) to assign to Blum the leases and rights Goldman has in those premises; (c) to account for all surplus of income over proper charges during Goldman's tenure, with payment of the surplus plus interest to Blum; and (d) to pay to Blum damages, consisting of that portion of Blum's attorney's fees attributable to the suit for reconveyance, and costs and expenses incurred.

 Since jurisdiction in this case is based upon diversity of citizenship,[1] the substantive law to be applied is that of Pennsylvania, where the events giving rise to the complaint occurred. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The following facts appear beyond dispute: In the fall of 1945, the realty in question was under the management of three trustees—the Bryn Mawr Trust Company, Mrs. Mary A. Lawler, and Mrs. Mary A. L. Conway. The Provident Mutual Life Insurance Company held an overdue mortgage of $603,500 on the property. Warner Brothers, lessees of the 69th Street Theatre,[2] was the principal tenant. The property apparently had been available for purchase at least since 1943.

Blum, an investor in real estate, had heretofore utilized the Lionel Friedmann & Company ("Friedmann") real estate firm in connection with certain purchases, rent collections, and one sale. Acting upon Blum's suggestion, Friedmann on November 1, 1945, sought and obtained exclusive authorization to sell the property in question.[3] The authorization, signed by Mrs. Conway and one Develin, vice president of the Bryn Mawr Trust Company, granted Friedmann an "exclusive agency" to sell the property for $653,500, "net to the seller. * * * No broker's commission shall be deducted from said sale price of $653,500." The authorization, originally effective until November 17, was later extended to December 15. Blum agreed to pay Friedmann a $5000 commission and a 3% commission as a fee for acting as rental agent in the event that Blum purchased the property. Blum, through Friedmann, negotiated with the mortgagee with regard to the financing; but mutually satisfactory arrangements were not completed.

In 1941, Goldman, operator of a number of motion picture theaters in the Philadelphia area, had indicated to the mortgagee a desire to acquire the property, but no deal was consummated. In early December, 1945, Goldman took renewed interest in the property, apparently because of its potential utility in the vigorous competition between Goldman and Warner Brothers. On December 10, Friedmann represented to Goldman that the former had a $50,000 option on the property. With Friedmann's unenthusiastic acquiescence, one Weiss, a vice president of Goldman, undertook to visit the mortgagee. There he spoke to one Savage, an officer of the mortgagee, and he made mutually satisfactory arrangements for extending and amortizing the mortgage. Savage secured an appointment for Weiss to see Develin, of which expected meeting Goldman thereupon informed Friedmann. Develin was

---

[1] Goldman is a Delaware corporation; Frank and Sara J. Blum are citizens of Pennsylvania. Suit was brought in the United States District Court for the Eastern District of Pennsylvania.

[2] The lease had 12 years to run.

[3] Friedmann had had an agency to sell the property in 1943; but no satisfactory offer had been received, and the agency had expired.

not told, nor did he know, that Weiss was employed by Goldman.

On December 13, Friedmann contacted Blum to determine whether Blum was still interested in the property. Blum was at best noncommittal about buying "because of his inability to make satisfactory mortgage terms." On December 14, however, Blum, with knowledge that Goldman was considering purchase of the property, decided to buy it for cash. In the company of two of Friedmann's representatives, he went to Develin's office and stated his willingness to pay the price stipulated in Friedmann's authorization. Blum tendered as down payment a $5000 check which Develin accepted. An agreement of sale, naming a straw party as vendee, was prepared and signed by Develin. One of the two Friedmann representatives, Shatz by name, asked about the signatures of the other trustees. Develin pointed out that it was late in the afternoon; but Shatz ascertained from Develin where Mrs. Conway and Mrs. Lawler lived, took the agreement to them, and on that same day obtained their signatures, as well as that of the straw party vendee. At about the same time, another of Friedmann's representatives, at Goldman's request, was mailing to Goldman a photostatic copy of the rent roll for the property.

On the morning of December 15, Goldman, appearing for the appointment, was advised by Develin that an agreement of sale had been signed by him the day before. Since it was still unknown to Develin whether the other trustees had signed, Goldman offered to pay $5000 more than Blum had offered. Develin accepted Goldman's check for $55,000. While a contract of sale to Goldman was being prepared, Shatz arrived with the signed agreement of the day before and an assignment in blank executed by the straw vendee. Goldman thereupon suggested that Blum's agreement had not yet been delivered, and that the agreement was therefore not enforceable. A representative of Friedmann told Develin that if he instructed Friedmann not to deliver the agreements, such instructions were desired in writing. Develin, after discussing the situation with the attorney of the trust company, handed the blank assignment to a representative of Friedmann, with the statement, "No instructions." Develin retained both checks. After consulting counsel, Friedmann delivered the Blum agreement to Blum.

Four days later, Blum was notified by Develin that title insurance had been ordered and that Develin was prepared to make settlement with Blum on January 5, 1946. Moreover, Develin delivered to Blum a settlement certificate and the old deed to the property. On "several occasions," however, Develin notified Blum that a higher offer for the property was being considered by the trustees.

Goldman increased the offer to $668,500 and finally to $678,500, together with an indemnity agreement, on January 4, 1946, and January 8, 1946, respectively. The former of the two offers induced the trustees to postpone indefinitely the settlement with Blum; the latter was the basis on which the trustees conveyed the property to Goldman.[4]

Upon learning that the trustees were about to accept Goldman's final offer, Blum's counsel on January 9, 1946, warned Goldman and the trustees that strict accountability would be sought in the event that withdrawal from the Blum agreement was attempted. On the following day, the trustees conveyed the property to Goldman. Thereafter, the trustees sent Blum a check for $5000; Blum returned it and requested an explanation; the trustees again sent Blum the check, but without an explanation.

A critical factor during the negotiations outlined above was the status of the law of Pennsylvania governing the sale of trust realty. Until 1945, it was settled that a trustee who had agreed to sell trust property was required to repudiate that agreement at any time before final settlement

---

[4] The indemnity provision, in the words of the court below, was an agreement "to hold the trustees harmless in any subsequent action whatever on the part of the plaintiff."

An additional feature of the $678,000 final offer was that the $75,000 in excess of the mortgage was to be kept by the trustees regardless of who eventually was awarded the property.

and conveyance if he received an offer substantially higher than the price for which he had contracted to sell the property. Kane v. Girard Trust Co., 1945, 351 Pa. 191, 40 A.2d 466. The Act of May 24, 1945, P.L. 944, 20 P.S. § 818, set out in the footnote below,[5] changed that substantive rule of property. A decision by a Pennsylvania Orphans' Court, dated December 4, 1945, held the Act unconstitutional. Brereton Estate, 93 Pittsb.Leg.J. 521. Subsequent to the conveyance of the property to Goldman, the Supreme Court of Pennsylvania reversed that decision.[6]

It is important to note that the only parties to the case sub judice are Frank and Sara J. Blum and William Goldman Theatres, Inc. We are not called upon to decide, and do not decide, what rights, if any, might be asserted against those not parties to this litigation.

■ It is clear that the trustees made a contract to convey the property to Blum. The power of the trustees to convey the property without court approval has not been challenged. Under the Act of May 24, 1945, therefore, the trustees were not relieved of their obligation to perform the contract; and, since Goldman accepted conveyance of the property with full knowledge of the Blum agreement, specific performance of that agreement could not be denied, unless it was established both that the agreement was tainted with fraud and that the power of avoidance of the agreement was duly exercised.

■ Unquestionably, the only fraud which might be urged in defense would be that on which the trustees relied, since Goldman as a purchaser with knowledge succeeds only to any rights which the trustees might have had. The trustees, unaware that Weiss was representing Goldman when they agreed to convey to Blum, could not have relied upon any fraud of which Goldman was victim. It is equally obvious that Blum was neither expected nor required to remind Develin that there were other potential purchasers of the property;[7] particularly when the record is devoid of evidence from which it might be inferred that Blum knew Develin was unaware of Weiss' connection with Goldman. See 37 C.J.S., Fraud, § 16b, and Restatement, Contracts, § 472, Comment b. By process of elimination, therefore, Goldman's allegation of fraud could be supported only by establishing that the conduct of Friedmann came under the principles set forth in Section 477, Restatement of the Law of Contracts.[8]

■ Considerable attention was devoted at the trial to the question whether Friedmann was Blum's agent. After careful consideration, the trial court found as a fact that Friedmann was not. It is not for us to decide whether we would reach the same conclusion had we been the original triers of fact. The trial court saw a rational basis other than agency for the dealings between Blum and Friedmann, and accepted their testimony that no agency relationship existed between them. There

---

[5] "When a fiduciary shall hereafter make a contract not requiring approval of court, or when the court shall hereafter approve a contract of a fiduciary requiring approval of court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the fiduciary of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise: Provided, That this act shall not affect or change the inherent right of a court to set aside a contract for fraud, accident or mistake." Act of May 24, 1945, P.L. 944, 20 P.S. § 818.

[6] In re Brereton's Estate, 1946, 355 Pa.

45, 48 A.2d 868. The Supreme Court of Pennsylvania held the Act to be constitutional.

[7] Both trustees who testified stated that they had never complained to Blum of Blum's actions.

[8] "Fraud or material misrepresentation by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto (a) has reason to know of the fraud or misrepresentation before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction, or (b) is affected by the fraud or misrepresentation under the law of Agency or of Trusts." Restatement, Contracts, § 477.

being sufficient evidence to support that finding of fact, we are not disposed to weigh the testimony anew. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c; see Barrett v. Denver Tramway Corporation, 3 Cir., 1944, 146 F.2d 701, 706. Thus, Section 477(b) of the Restatement of the Law of Contracts is of no avail to Goldman.

As to Section 477(a), we shall assume arguendo that Pennsylvania law would be in accord with the Restatement view. According to the principles set forth in the Restatement, it was incumbent upon Goldman to establish (a) that the failure of Friedmann to make full disclosure to the trustees constituted a fraud upon the trustees, and (b) that Blum had reason to know of such fraud. We need not decide whether Friedmann was bound to disclose to the trustees what he knew about Goldman's desire to purchase the property, particularly when neither Friedmann nor the trustees are parties to this case. It is sufficient to note that it cannot be inferred from the testimony that Blum had reason to know of such fraud, if fraud there was. On the other hand, since the trustees never saw fit to complain of Blum's actions, and since Blum knew of Develin's appointment with Weiss,[9] we are impelled to the conclusion that Goldman failed to prove fraud chargeable to Blum.

Even if we had come to a contrary conclusion, however, affirmance of that portion of the decree ordering conveyance of the property, assignment, and accounting would be required, since the action of the trustees subsequent to their learning all the facts constituted ratification of the Blum agreement.[10] Although Develin notified Blum that Goldman's offer was being considered, and although the trustees did eventually convey the property to Goldman, Develin (1) failed to instruct Friedmann not to deliver the assignment and agreement, (2) did not return Blum's down-payment until about January 10, more than three weeks after full disclosure was made, (3) notified Blum by letter that title insurance had been ordered, (4) sent Blum the old deed to the property, and (5) twice arranged a settlement date with Blum. See Wood Co. v. McCutcheon, 1939, 136 Pa. Super. 446, 452, 7 A.2d 564, 567, and Klauder v. Cregar, 1937, 327 Pa. 1, 9, 192 A. 667, 671; and cf. §§ 480, 483, and 484, Restatement, Contracts, with Pennsylvania annotations thereto, and §§ 93 and 94, Restatement, Agency, with Pennsylvania annotations thereto. Moreover, there was abundant basis in the record for the finding of the lower court that the dominant motive of the trustees in withholding conveyance of the property to Blum was the belief that they could obtain a better price, rather than any fraud allegedly perpetrated upon them. We agree with the court below that the facts of this case, in the present posture of the Pennsylvania law, require the application of the rule set forth in Atlas Portland Cement Co. v. American Brick & Clay Mfg. Co., 1924, 280 Pa. 449, 124 A. 650;[11] viz., that Blum should not be deprived of any right merely because the trustees thought more money could be secured by holding the property. Consequently, we find no error in the conclusion of the lower court that the trustees by January 10, 1946, had lost any right they might have had to void the Blum agreement.[12]

---

[9] We note further that the trial court found that the fact that Blum wanted to deal with Friedmann as the trustees' exclusive agent was not enough to establish what would amount to a conspiracy between Blum and Friedmann.

[10] This was the basis of decision by the court below.

[11] Goldman's briefs do not discuss this case, which the lower court found to be in point.

[12] Goldman suggests that the enumerated acts of ratification were taken by Develin alone, and consequently cannot be considered as binding upon the other trustees. This argument, however, fails to recognize that, at best, the two individual trustees, with full knowledge of the situation, failed to act or give other indication that they did not share Develin's views. In fact, there was positive testimony by Mrs. Conway to the effect that she had never complained to either Friedmann or Blum. Under the law of Pennsylvania, it would appear that the individual trustees, under the circumstances, would be bound by Develin's acts of ratification. See Philadelphia Trust, Safe-

■ Goldman has stressed familiar principles of restitution which are alleged to be applicable to the instant case. Stated briefly, Goldman's position is based upon the theory that Friedmann had acted fraudulently toward the trustees; that, since Friedmann was acting as agent for Blum as well, the Blum agreement was voidable; and that Goldman therefore was not enriched unjustly in securing the conveyance of the property. The difficulty with Goldman's argument is that none of the premises which would lead to the application of the restitution principles have been proved; nor is recognition given to the fact that the trustees, rather than exercising their alleged power of avoidance, followed a course of action which at best could be interpreted only as a failure of timely disaffirmance.

■ Since Goldman, a vendee with knowledge, stands in no better position than the trustees; and since Blum had the right of specific performance against the trustees; it follows that conveyance of the property by Goldman, together with an assignment and accounting, was properly decreed.

■ We now pass to the consideration of that portion of the decree which awarded to Blum damages including attorneys' fees. In an Opinion Sur Decree,[13] the trial court, relying upon Restatement, Torts, § 766, found as an additional fact that, "The defendant with knowledge of the contract rights of the plaintiff maliciously and without reasonable justification or excuse intentionally and knowingly induced the trustees to breach the contract to the plaintiff's damage." This led to the legal conclusion that Blum was entitled to recover damages consisting of expenses of litigation and reasonable counsel fees incurred in connection with the recovery of the property in litigation. The court below did recognize the general rule that a party to adversary litigation is ordinarily required to pay his own counsel fees, as otherwise

"clients would pay liberally out of the pockets of their adversaries," Alexander v. Herr's Ex'rs, 1849, 11 Pa. 537, 539; but held applicable an exception to the general rule, which permits recovery of "the expenses of other litigation, incident to the contract so made, incurred in the unsuccessful attempt to enforce it. See Case Note 41 A.L.R. 1153." [14]

■ In our opinion, the case sub judice falls within the general rule, and is clearly distinguishable from the class of cases deemed controlling by the court below.[15] Hackett v. Hackett, 1932, 104 Pa.Super. 353, 159 A. 226, allocatur refused 104 Pa. Super. xxv, presents a set of facts which, as to this issue, is very close to the case at bar. In that case, a trust company, through fraud, accident, or actionable mistake, had added the name of a grantee in recording a deed. The trial court entered a decree ordering the grantee to convey the property and ordering the trust company to pay the complainants "all reasonable expenses to which they have been put in connection with said fraud, accident, and mistake, including reasonable counsel fees." On appeal, the Superior Court of Pennsylvania, quoting at length from Smith v. Equitable Trust Co., 1906, 215 Pa. 413, 417, 64 A. 591, 592, reversed the decree in so far as it directed the payment of counsel fees. This holding we deem to be dispositive of the issue. Consequently, we refrain from commenting upon the question whether or not the activities of Goldman constituted inducement of breach of contract.

The damages ordered were in the sum of $5356.48, of which $5000 represented the attorneys' fees. Disallowance of the attorneys' fees will result in a reduction of the award to $356.48 and taxable costs.

For the reasons stated, paragraph 4 of the decree of the court below will be modified to eliminate that portion thereof which orders the payment of $5000 attorneys' fees. As so modified, the decree will be affirmed.

Deposit & Ins. Co. v. Philadelphia & R. Coal & Iron Co., 1891, 139 Pa. 534, 21 A. 70; In re Rambo's Estate, 1937, 327 Pa. 258, 193 A. 1; and see Restatement, Trusts, § 194(c), and 65 C.J., Trusts, § 531, p. 668.

[13] The Opinion Sur Decree is reported in D.C., 1946, 69 F.Supp. 468.

[14] But see Norcross v. Otis Bros. & Co., 1893, 152 Pa. 481, 25 A. 575, 34 Am.St. Rep. 669.

[15] Blum has alleged no expenses incurred in other litigation.