**SEABOARD SURETY COMPANY**

v.

**PERMACRETE CONSTRUCTION CORP., James A. Gannon, George B. Gay, George H. Weinrott, Thomas B. Smith Company, Davis P. Smith.**

**Civ. A. No. 12813.**

United States District Court,
E. D. Pennsylvania.

July 12, 1954.

performance bond at the instance of the defendants. The cause of action set out in the complaint is, in substance, a common law case of deceit, described as a conspiracy, in which all of the defendants are alleged to have taken part.

Without going into the somewhat complicated background of the case, the essential facts as established by the verdict of the jury are, briefly, as follows:

The defendant Permacrete was a corporation which had developed a new method for building houses by the use of prefabricated concrete slabs, defendants Gannon, Gay and Weinrott being connected with the corporation in one capacity or another.

Shenandoah, a Virginia corporation, contracted with Permacrete to have the latter construct 108 houses for it at Front Royal, Virginia. A performance bond was required for the usual reasons and also in order to obtain Government participation in the enterprise.

Permacrete applied to the defendant Smith, an insurance broker in Philadelphia, who in turn took up with the plaintiff the matter of writing the bond.[1] The plaintiff made it an absolute requirement that Permacrete have $170,000 of free and unencumbered cash capital. Permacrete had practically no capital at all and, in order to make a showing of compliance with the plaintiff's requirements, it arranged for an advance from Shenandoah of $170,000 to be repaid by reducing the payments called for by the contract as the work progressed and then, through Smith, represented to the plaintiff that the money so obtained was cash capital and surplus, concealing the fact that it was in effect a loan and that the terms of the contract with Shenandoah in respect of payment had been altered.

The plaintiff wrote the bond on the faith of this representation transmitted to it by Smith, the building operation collapsed, the plaintiff was sued upon the bond by Shenandoah and, after incurring

Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Thomas E. Comber, Jr., Pepper, Bodine, Stokes & Hamilton, Philadelphia, Pa., Morris L. Weisberg, Harry Norman Ball, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

This is a suit by a surety company to recover losses incurred by it, following the collapse of a building operation for which it had written the contractor's

[1.] There were actually two contracts and two bonds but it simplifies the discussion to treat the whole thing as one transaction.

counsel fees and expenses, settled the suit by a cash payment.

This action was brought to recover its outlay in connection with the Shenandoah suit and resulted in a verdict for the plaintiff in the amount of $40,000.

The defendant Smith argues that the verdict must be set aside because the plaintiff admitted in an answer to an interrogatory that it did not rely upon oral representations made by Smith when it wrote the bond, but it seems to me that the argument misses the theory upon which the issue of his liability was submitted to the jury. The plaintiff's position was that it wrote the bond relying upon false representations, not made by Smith as his, but made by others and transmitted to it by him with knowledge of their falsity and with intent that they should be acted upon. The Court submitted the issue as follows: "that these defendants, in pursuance of a plan that they had, transmitted to it (the plaintiff) information which was not true and in reliance upon which it wrote a surety bond which it would not have written had it known what the true state of the situation was." The plan referred to was the conspiracy charged in the complaint. Any act on the part of any one of the defendants in furtherance of the plan would be sufficient to make him liable if the actor had reason to know that the plaintiff would be deceived by what he did. The jury found, upon sufficient evidence, that Smith had so acted.

Smith was not the agent of the plaintiff but was acting for Permacrete and its officers, who were endeavoring to obtain a bond which they knew they would not get if the plaintiff ever got a true picture of Permacrete's finances. Smith was the only one of the defendants who had direct contact with the plaintiff, and it was only through him that a false picture reached the plaintiff.

The gist of the action against Smith was that he told Parker "that they had $170,000 cash capital". He so testified on the stand. The jury found the critical fact that he knew that the representation was untrue, and that being so, it is immaterial whether he was making it upon his own responsibility or relaying a representation made by others. Under these circumstances, his liability would have been no different had he, in furnishing this information, expressly disclaimed responsibility for its correctness or any knowledge of its truth or falsity.

In view of Smith's testimony, the admission referred to above, upon which the defendant relies, is of no effect.

The defendants contend that they were entitled to a directed verdict on the ground that the evidence failed to establish causal connection between the wrong and the damages claimed.

After Permacrete's default, the plaintiff was sued upon the bond by Shenandoah. Shenandoah, so far as appears, had nothing to do with the deception by which the plaintiff was induced to write the bond. The amount claimed of the plaintiff by Shenandoah in its complaint was in excess of $550,000. The plaintiff employed counsel in the litigation and ultimately settled the suit (together with one which it had brought for a declaratory judgment of nonliability) by paying Shenandoah $35,000. It had already incurred counsel fees in the amount of $25,000 and expenses of $2,-479.92. The attorney for the plaintiff testified that he arrived at the settlement figure of $35,000 by taking into account an estimated additional $25,000 of counsel fees, which would have been incurred had the litigation been carried through, a premium of $8,400 which the plaintiff had tendered when it disclaimed liability and $1,600 for anticipated miscellaneous expenses of further litigation. He also testified that he took into consideration a remote possibility that Shenandoah might be able to prove knowledge by the plaintiff of the alteration of the terms of the principal contract, which change constituted the whole basis of the defense. The Court submitted to the jury the questions whether the counsel fees paid were reasonable and whether the settlement was, under all the circumstances of the case, a reasonable and

proper one. The jury returned a verdict in the amount of $40,000.

The general rule applicable in tort cases is stated in the Restatement, Torts, Sec. 914, as follows: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred." While the expenses of litigation and attorney fees are not recoverable either as costs or damages if incurred in connection with the original litigation against the wrongdoer, they may be recovered as damages if incurred in collateral litigation where they were a proximate result of the fraud. 37 C.J. S., Fraud, § 141, p. 468. This general principle is too well settled to admit of any question and was fully recognized as the law by the Court of Appeals for this Circuit in the two Blum cases, Blum v. William Goldman Theatres, 3 Cir., 164 F.2d 192; Id., 174 F.2d 914, although the Court, relying upon the Pennsylvania decision in Hackett v. Hackett, 104 Pa. Super. 353, 159 A. 226, deemed it inapplicable to the cases then before it.

The decisions cited by the defendants do not support their contention. In Tugboat Indian Co. v. A/S Ivarans Rederi, 334 Pa. 15, 5 A.2d 153, the position asserted by the plaintiff that it had never been under any liability whatever and that the shipowner and charterer were the only parties responsible for the accident threw the case into the category of cases in which one voluntarily discharges the obligation of another and in which the right to recover depends upon the existence of duress through seizure of property or arrest of person. In the present case it is not even suggested that the plaintiff in making the settlement was paying someone else's obligation. Either the plaintiff was liable on the bond or no one was. In a Kentucky case, New York Life Insurance Co. v. Hord, 78 S.W. 207, the plaintiff, an insurance company, voluntarily paid to the insured's estate the amount of a policy of life insurance which it had been induced to write by the joint fraud of the insured and a doctor. Then it sued the doctor to recover the amount so paid. Of course, it could have defended any claim by the insured's estate on exactly the same grounds as it asserted in its suit against the doctor. There is no question about the rule that one cannot, with knowledge of a fraud perpetrated upon him by two wrongdoers jointly, voluntarily pay the fraudulent claim to one of the two and then sue the other to recover payment. In the present case the fraud upon the plaintiff, which induced it to write the bond, would have been no defense to Shenandoah's claim against the plaintiff, since Shenandoah was not a joint wrongdoer with these defendants and not a party to the fraud.

I think that the verdict of $40,000 could be sustained solely as representing attorney fees actually incurred and inevitable if the litigation were to be pursued to a finish. However, I think the $35,000 settlement was also recoverable for what it was. If it were not, the wholly unreasonable result would be that the plaintiff would be bound to carry through litigation, which could only have resulted either in a judgment against it of hundreds of thousands of dollars (which in turn the defendants ultimately would have been compelled to pay) or a judgment in its favor, to obtain which would almost certainly have cost more than the settlement figure and which cost, again, the defendants would have had to pay.

■ The defendants contend that the Court erred in charging the jury to the effect that it was unnecessary for the plaintiff to show that lack of capital was the thing that caused the collapse of the building operation and the consequent loss to the plaintiff.

The representations relied upon were upon a matter directly material to the risk and their falsity enormously increased it beyond that which the plaintiff

intended to assume in writing the bond. This, I think, is sufficient to charge the defendants with liability for loss incured as a result of assuming the risk, at least in the absence of proof of some independent intervening cause wholly unconnected with the subject of the representations. Any other rule would impose an impossible burden upon the plaintiff in a case of this kind. There are countless factors which enter into every business failure and any number of different things may have played a part in the failure of this large-scale building operation—lack of intelligent management or of skilled technical direction, basic infirmities in process and method, delays, miscalculations, inefficiency of unskilled personnel and many others. Total lack of free capital would almost certainly be a major factor, but I doubt that it could ever be proved that it was the sole or proximate cause or that, given requisite financing, the enterprise would have succeeded. The cause of action here is an intentional wrong and the harm contemplated was to expose the bonding company to the risk of writing a bond for a contractor which had not a dollar of cash capital. The harm eventuated in loss through the failure of the contractor to fulfil its contract. This is the very harm the risk of which was increased by the misrepresentation. See Restatement, Torts, Sec. 915.

The questions raised by the motions of defendants Weinrott and Gannon have been disposed of in the foregoing discussion. As to these defendants, the verdict is supported by ample evidence.

■ The motion of the defendant George B. Gay for judgment notwithstanding the verdict will be granted, on the ground that the evidence submitted to the jury of his participation in the plan was insufficient to meet the well established requirements for proof of fraud or deceit. The only facts in the case against him, upon which the verdict could have been rendered, were the following:

Early in the course of the negotiations, at a time when they were talking about a bond for only a thirty-house operation, he stated to Smith, in substance, that he was "handling" Permacrete's capital structure, which had not then been completed, and that "he would be responsible" for the capital.

Three days after the bonds were delivered, he loaned the defendant Weinrott $10,000. This money was deposited by Weinrott to make up the $170,000 which the plaintiff required and which it proposed to verify at the bank. Gay denied that he knew the purpose of the loan, which, on its face, was a personal loan to Weinrott, and there is no direct evidence that he did know what Weinrott did with it.

He signed a letter a day after the bonds were delivered, certifying that Permacrete had $170,000 of cash capital and surplus. This letter, the Court ruled, could not be considered by the jury as an inducing factor because the plaintiff had already delivered the bond but could be considered as evidence bearing upon the participation by Gay and Gannon in the fraud.

In order to hold Gay liable, two things would have to be shown by clear and convincing evidence, first, that he knew that representations were being made that Permacrete had $170,000 of surplus and cash capital, second, that Permacrete did not have and did not intend to have $170,000 cash capital and surplus. That he knew the first fact can be assumed from his signing of the letter so certifying. There is no proof that he knew the second. There is so little evidence as to just what his participation in the enterprise was that the jury could not properly have found that he must have known about the way in which the money was obtained by Permacrete in order to make a showing of having met the plaintiff's requirements.

The motion of the defendant Gay for judgment will be granted. The motions of the other defendants will be denied.