8 W 227
e215 ⁰417

## Wilt *against* Vickers.

In an action on the case, *quod servitium amisit,* by a father against one who, having his son at hire, put him upon a vicious horse, by which he was thrown and his leg broken, it is not competent for the defendant to show how he had treated him before the accident.

The opinion of the surgeon whether the boy would recover the use of his limb, is competent evidence in such action.

The declarations of the mother who nursed him, even if made in his presence, are not competent evidence for the defendant; nor is the intemperance of her habits.

The expectation of a witness that he will receive a part of the money recovered, if he be not legally entitled to it, is an objection to his credibility, but not to his competency.

If an injury be inflicted upon a child while living with and in the service of his father, he may maintain trespass; but if at the time he be hired to, and in the service of another, trespass on the case is the proper remedy.

The expense of prosecuting an action by a father for an injury to his son, is a proper subject of consideration by the jury in assessing the damages.

ERROR to the common pleas of *York* county.

Vickers against Wilt. This was an action on the case in which the plaintiff alleged that he had hired his son to the defendant, who caused him to ride an unruly house from which he was thrown and one of his legs broken.

Several bills of exceptions were taken by the defendant to the admission and rejection of evidence and the charge; all of which are distinctly stated in the opinion of the court.

*Mayer,* for plaintiff in error.
*Morris* and *Gardner, contra.*

The opinion of the Court was delivered by

KENNEDY, J.—This was an action on the case, brought in the court below by the defendant in error, against the plaintiff in error. The ground of the action was that the son of the plaintiff below, a minor about nine or ten years of age, being in the service of the defendant under a hiring, upon an agreement made with the father, specifying no definite period of time, the defendant compelled the

son to ride an unruly and unmanageable horse, knowing the horse to be such, in order to take him to pasture; that the horse threw the son off so as to break the bones of one of his legs, whereby the plaintiff, the father, not only lost the service of his son, but was subjected to great expense in nursing, taking care of, and employing surgeons for the purpose of curing him.

The first error assigned is a bill of exception to the opinion of the court, for refusing to permit the plaintiff in error to ask a witness on the stand, " What was the defendant's treatment of the boy before the accident?"   It does not appear to us, that an answer to this question could have been evidence material to the issue. Whether the defendant below had treated the boy kindly or otherwise before he compelled him to ride the horse, could neither justify nor extenuate his conduct in compelling the boy to do a thing which he had reason to believe the boy was incompetent to perform, and would be attended with great peril and probable injury to the boy. The court below were, therefore, right in rejecting the evidence.

The second error is an exception to the opinion of the court, in overruling an objection made by the counsel for the defendant below to the counsel of the plaintiff's asking Dr Patterson, a witness adduced and sworn, " whether, from the condition of the limb and the extent of the injury, he thought the boy would ever regain the use of his leg?"   It is very apparent that this question was calculated to elicit from the witness what might be very material to the issue trying; because, if answered in the negative, it would have been evidence to show that the plaintiff below would be a loser by the injury done to his son, as long as he should have a right to claim his services, or any benefit in them, which would be until the boy attained the age of twenty-one years.   It is argued, however, that the court erred in permitting the question to be asked, because it was letting in evidence which might influence and induce the jury to give damages commensurate with the injury done to the son, instead of the father.   But this effect of the evidence upon the minds of the jury, could be guarded against and prevented by a proper instruction from the court as to the law in this respect.   For instance, if the answer of the witness should be, that he thought the boy would never recover the proper use of his leg, then, the gist of the action being the loss of the boy's service, the defendant below, or his counsel, had a right to require the court to instruct the jury, that though the boy should never regain the proper use of his leg, yet the plaintiff could not, at most, be a loser thereby longer than until the boy should attain the age of twenty-one years, when the right of the plaintiff to his service would be determined; so that they could not allow the plaintiff damages, on account of the loss of the boy's services, beyond that time.   It is obvious, also, that if the question had been asked of the witness in the form that the counsel for the plaintiff in error contends for, it would, most probably, have led ultimately to a disclosure of the same evidence

[Wilt v. Vickers.]

and opinion of the witness, that seemed to be required by an answer to the question put.    For suppose the witness had been asked whether he thought the boy would recover the complete use of his leg before he should attain the age of twenty-one years, if he lived so long; is it not altogether probable, if the witness had answered that, he was of opinion he would not, he would then have been asked why he thought so?    To this question there could have been no objection; and is it not likely that the witness, if he believed the injury to be of such a nature as to be permanent, and one that would remain with the boy during his life, would have said so, in so many terms?    We, therefore, think there is no error in the opinion of the court, to which this exception has reference.

The third error is also an exception to the opinion of the court, in overruling the objection of the counsel of the defendant below to an answer being given by Dr Patterson, a witness, to the plaintiff's question,-" whether the sufferings of the boy were great or not." We can not undertake to say that such question was altogether impertinent or improper, though it could draw forth but very little that would weigh any thing in deciding the cause.    The answer might be evidence tending to satisfy the jury of the extent of the disability produced by the conduct of the defendant, from the consideration that great bodily suffering or pain is generally produced only by a corresponding injury.    We, therefore, can not say that the court erred in permitting the question to be asked.

The fourth and sixth errors being bills of exceptions to the opinion of the court, overruling evidence offered by the defendant below to prove the declarations of the boy's mother, who was shown to have nursed and waited upon him during his illness from the fracture, and embracing the same point, will be taken together as one error.    It is claimed that this evidence ought to have been admitted upon the ground that the wife was the agent of the defendant in nursing and taking care of the boy.    But admitting that she was employed or entrusted by the father to take charge of the boy for this purpose, the declarations made by her, of which the proof was offered, were not connected with such agency, nor made by her under any authority given, either express or implied by the defendant.    To make the declarations of an agent evidence against the principal, it is requisite that they be made in the course of performing the agency or business appertaining to it, and with a view to accomplish or effect it.    The declarations of the mother proposed to be proved here, seem to have had no connection with her agency, and therefore were wholly inadmissible.

The plaintiff's fifth error is an exception to the opinion of the court refusing to let the defendant's counsel ask Dr Beck, who attended the boy as his physician at the house of the defendant below, after the injury had been done, and before the removal of the boy therefrom to his father's house, " Whether or not he was asked at

VIII.—U*

[Wilt v. Vickers.]

his last visit about removing the boy, and if so, what opinion he gave." It does not appear distinctly with what view this question was propounded, or what the defendant expected to prove by the answer that might or would be given to it by the witness, so as to enable us to decide clearly that it was proper and ought to have been permitted by the court below to have been asked. The counsel ought to have stated explicitly what he expected to prove by the answer, so that the court below, as well as this court, might know what it was, and accordingly decide upon its admissibility. But, this not having been done, we are unable to say that the court below erred in refusing to let the question be answered.

The seventh error is founded upon an exception to the opinion of the court, refusing to permit the defendant to give evidence that the boy's mother, who nursed and took care of him during his confinement from the fracture of his leg, was of intemperate habits. The evidence would seem to have been offered, that the jury, though without the least spark of evidence having been given which tended to prove it, might infer thence that the boy, through the want of proper attention to him on the part of his mother, had become disabled in a greater degree than would have been the case had his mother been a woman of sober and temperate habits. We, however, do not consider that such inference could have been fairly drawn from the evidence offered. It was, therefore, properly rejected.

The eighth error is an exception to the opinion of the court, in refusing to permit the defendant to give evidence of the declarations of the mother of the boy made in his presence, without contradiction from him, as to what the boy had said about the removal of him from the defendant's to his father's having hurt him, and of his having screamed so, that she could not stay in the house. It must be observed here that the boy is no party to this suit. He is not seeking to recover any thing in it for his suffering. It is the father who complains here of being damnified by the conduct of the defendant; and it is difficult to discover any sound principle upon which the position can be sustained, that the father in this action ought to be affected even by the declarations of the boy, unless they went or tended to contradict or impugn his evidence given on the trial, much less his silence. Besides, it can easily be believed that either a boy's respect for, or dread of incurring the displeasure of his mother, would be sufficient to prevent him from contradicting her, though she should be stating certain things in regard to him that were not so. The evidence was clearly inadmissible and properly rejected by the court below.

The ninth error is an exception to the charge of the court on the first point of the defendant below, which he submitted to the court for the purpose of having their direction on it to the jury. The point is in these words: "If the jury believe that John Vickers, the witness, (that is, the son,) is to get some of the money for which

[Wilt v. Vickers.]

this suit is brought, they are bound to throw out his testimony and pay no regard to it." Whereupon the court instructed the jury that, "If they should believe that John Vickers, the witness, is *legally* entitled to receive some of the money for which this suit is brought, in the event of a recovery by the plaintiff, they are bound to throw out his testimony and pay no regard to it. But if he is not *legally* entitled to any of the money; then the fact that he *expects* some of it, as stated by the witness, can only affect his credibility, and not exclude his testimony from the consideration of the jury." It does seem that what is here stated ought to commend itself to the conviction of any intelligent mind, at least upon a little reflection, if not at the first blush. It would be most unreasonable to permit a witness by his expectation, or any hope that he may entertain, of participating in the recovery of the plaintiff, to deprive the latter of the benefit of his testimony. But this cannot be; for it is well settled that to render a witness incompetent on the ground of interest, he must be either *legally* entitled to gain in the event of the verdict and judgment being in favour of the party for whom he is called to testify, or *legally* liable to lose in case of the issue being determined against such party. The court were, therefore, right in their direction on this point.

The tenth error is an exception to the answer of the court on the third point, submitted by the counsel for defendant below, whereby the court were requested to charge the jury, "that if they believed that George Wilt, the defendant, wilfully, forcibly, and against the will of John Vickers, seized and placed him upon the horse, knowing the latter to be unmanageable and dangerous at the time, Wilt would be liable in an action of trespass, but not in an action on the case; and therefore the plaintiff cannot recover in this suit, although he might in another." The court upon this point charged negatively, and said, "admitting the facts to be as stated on this point, the suit is well brought, and the plaintiff would, if injured, be entitled to recover in this action."

If the boy had been in the service of his father at the time, instead of the defendant, and the latter had compelled him, as is suggested in the point submitted here, to ride the horse, it is clear, according to all the ancient authorities, as well as the books of entries and precedents, as reports of the decisions of courts, that the action sanctioned thereby, would have been trespass and not case. See *Reg. Brev.* 102; *Rast. Ent.* 674, *b.*; *Fitz. N. B.* 208 [91]; 21 *Hen.* 6. 31; 21 *Hen.* 6. 9; 22 *Ass.* 75; Swallow *v.* Stephens, *Clayt.* 17; Moore *v.* Stone, *Styl.* 94; Queen *v.* Daniel, 6 *Mod.* 182; Queen *v.* Collingwood, 2 *Ld. Raym.* 1117; Courtney *v.* Callot, 1 *Ld. Raym.* 274; per *Holt*, C. J.; Ditcham *v.* Bond, 3 *M. & S.* 436. But here it must be observed, that the son, at the time, was actually the servant of the defendant below, and not in the service of his father. And I take it, that the mere relation of father and child, though the latter be a minor, and subject to the authority and control of the former, is not sufficient,

*per se*, to enable the father to maintain an action of trespass for an assault and battery, or any violence of the like kind, committed on the child.   In Gray *v.* Jeffries, *Cro. Eliz.* 55, the court say, "Trespass for beating or battery of the son, lieth not for the father, but for the son, who shall have the action."   This would seem to accord not only with the principles of the law generally, but with those of reason also.   For the battery or violence committed on the person of the child can neither in fact, nor in law, be considered as done upon the person of the father, nor as violating any of his personal rights, but must be considered as a direct attack upon the rights belonging and appertaining to the person of the child; for which the child is entitled to be redressed by an action of trespass against the aggressor.   It will not, I presume, be contended by any one, that the father can maintain an action of trespass in his own name or right for a bare assault or even an assault and battery committed on his child, which effected no real damage or disability whatever to or in the person of the child, yet it being a violation of a most sacred and inviolable right, which the child, as well as every one, of whatever age or sex he or she may be, has under the law to be made perfectly secure in the enjoyment of his or her life and liberty, would have a clear right to maintain an action of trespass, wherein he or she would be entitled, or at least might, according to law, recover such damages, though no real damage had been suffered or sustained by the injury, as the jury might think the defendant ought to be made to pay as a punishment merely, so that he should be deterred from doing the like again.   The right of the father to maintain an action for a personal injury done to his child, would seem to grow out of the right which he has to its services; and therefore this action may be said to be founded upon the relation rather, of master and servant, than that of parent and child, and the loss of the services of the child, by reason of the injury.   The loss of service is clearly the *gravamen* or *gist* of the father's action in such case, and so laid in his declaration.   Indeed, if the loss of the service were not stated or alleged therein, it would be bad as containing no cause of action.   The rule established whereby the damages are estimated in such cases by the jury, also shows that such is the real ground of the action.   The value of the loss of the service, ought to regulate and govern the amount of the damages, which the jury should give.   22 *Ass.* 75.   And accordingly in Flemington *v.* Smithers, 2 *Car. & Payne,* 292, in an action on the *case* brought by the father for the loss of his son's services, a minor of about fifteen, who drove his father's stage coach against the defendant, the owner of a wagon, for the negligence of his servant in driving the wagon, whereby the plaintiff's son was thrown off the plaintiff's coach, and injured *per quod servitium amisit,* tried before Abbot, C. J., the jury were directed, if they found for the plaintiff, to give such reasonable sum, as to them, might appear proper for the loss the plaintiff had sustained in being deprived of

[Wilt v. Vickers.]

the assistance of his son, and the expenses he must have been put to by his being out of his place; and a small compensation for the son's mother going to visit him at the hospital where he lay, and taking to him clean linen, with such other things as were not provided there. But beyond this they could not go. They could not give damages on account of any injury that might be done to the parental feelings, as in cases of seduction. Had the injury in this last case, been wilfully done by the owner himself, of the wagon, the action, according to the authorities first cited above, ought to have been trespass, though the ground of recovery, as also the measure of the damages, would have been the same. There are also some cases on the subject going to show, that an action for such cause, though it be trespass, is only so in form; and that it is in reality, an action on the case, treated as such, and that the principles of both the common and the statute law, which are applicable to actions on the case alone, govern it throughout. For instance, vindictive or exemplary damages, it would seem, cannot be recovered in it, as may be in every action of trespass founded upon an act producing an immediate injury to the plaintiff, whether it be in his person or his property. And in the case of Cook *v.* Sayre, reported in 2 *Burr.* 753, and 2 *Wils.* 85, it being an action of trespass and assault for criminal conversation with the plaintiff's wife, in which the defendant pleaded first not guilty, which was found against him, and damages assessed by the jury; and next not guilty within *six* years, to which the plaintiff demurred; and upon this issue the court gave judgment for the defendant, upon the ground, as it appears from *Bul. N. P.* 28, and 3 *Wils.* 332, that the gist of the action, was the *criminal conversation,* which could not, in reality, be considered a trespass, even as regarded the husband, who had given no assent to it, and therefore did not come within the clause of the statute of limitations, limiting actions of trespass to *four* years, but fell within that applicable to actions on the *case* limiting them to six years. It is true that the court, in M'Fadzen *v.* Olivant, 6 *East,* 387, held that the plea of not guilty, within *six* years instead of *four,* was good upon general demurrer; because *six* includes *four,* and if he was not guilty within *six* years, he, of course, could not have been so within *four;* that it was, therefore, only a defect in form, and could not be taken advantage of upon general demurrer. But still the judges admit distinctly, that Cook *v.* Sayre was decided upon the ground that the real *gist* of the action was case. And refer also to the case of Parker *v.* Ironfield, in the *K. B.* 19 *Geo.* 3, pp. 390–1, 6 *East,* which was an action of trespass for assaulting and debauching the plaintiff's daughter *per quod servitium amisit,* but according to the endorsement made by Mr. Justice Buller, in his own hand upon his paper book on the cause, it was considered in reality *case* from the nature of it.

But further, if the son were compelled by the defendant to ride

the horse under the circumstances mentioned by the counsel for the defendant, in the point under consideration, it cannot admit of·a doubt, but the son might have maintained an action of trespass against the defendant for the violation of his personal rights; and if the father can maintain his action also, then the case would seem to contain two causes of action, and to fall within the principles laid down in the Earl of Shrewsbury's case, 9 *Co.* 50 *b,* and the cases there mentioned and referred to.    There it is laid down, in allusion to the second cause of action, " when there are two causes of action in the case, the one the *causa causans,* and the other *causa causata,* *causa causans* may be alleged to be *vi et armis,* for that is not the immediate point or cause of action, but *causa causata,* as in 12 *Hen.* 4, 3 *a,* the putting dung into the river is *causa causans,* and therefore it might be *vi et armis,* but *causa causata,* the point of action in the case, is the drowning of the plaintiff's land.    So in Rex *v.* Hostler, (2) *Register* 105 *a,* the breaking of the inn may be alleged *vi et armis;* for *defectus custodiæ* is the point of the action in the case against the hostler. *M.* 29 *Ed.* 3, 18 *b.*    The Abbot of Evesham brought an action on the *case* against certain persons, and declared that he had a fair in S, with all that belonged to a fair, and that the defendants, with *force and arms* disturbed the people coming to the fair (which was *causa causans*) by which the plaintiff lost his toll, (which was the *causa causata,*) the point of the action, and the action held maintainable."    From these authorities, as well as from the nature of the thing, notwithstanding the *causa causans* is perpetrated wilfully and with *force and arms,* yet where the *causa causata* is made the ground of complaint, or the *gravamen* of the action, it would seem that the action ought to be *case* and not trespass.    Now in the present case, it is perfectly clear, that the point of the plaintiff's action is the *causa causata,* and according to the analogy of the law and the rule, as established by the authorities last cited, the action is well brought in case.    But in further support of it, we have an authority of our own, which goes far towards ruling the point.    In Ream *v.* Rank, 3 *Serg. & Rawle* 215, it was adjudged by this court, that *case* lies·by the father for debauching his daughter and getting her with child, *per quod servitium amisit;* and that it is the most proper form of action; yet according to the ancient English authorities, trespass was the form adopted and used in practice in such case, though in the latter case no force can be said to have been committed upon the daughter, still the father's right to the *service* was affected against his consent, which forms the gist of his action in either case: and the loss of the child's service is the only ground upon which he can maintain his action or right to recover damages against the defendant.  .But if any thing further were still wanting to support this form of action, it may possibly be thought by some to be distinguished from the case where the son, at the time of the injury done to him, is in the immediate service of the father.    Here he was not so; he was

[Wilt v. Vickers.]

actually in the service of the defendant under an agreement of hiring made by the father himself, so that the father had not, as it were, the possession of his son at the time, if that would be considered any way material, as it would seem to have been held in one case at least, of injury done to the personal property of the absolute owner. In Hall *v.* Picard, 3 *Camp. Ca.* 187, Lord Ellenborough ruled, where the owner of a horse let him to hire for a certain time, during which he was killed by the owner of a cart driving it violently against him, that the remedy of the owner of the horse against the owner of the cart was *case* and not trespass. He said it was in the nature of an injury to the plaintiff's reversion. And if it should be objected here, that the son was not hired by the father to the defendant for any certain time, it may be answered that the son unquestionably thereby became the servant of the defendant, and the latter, as master, entitled to his immediate services; so that if the son had been disabled, and rendered unable to perform the services for which he was hired, through any violence committed by another person, the defendant, according to the opinion of Hull, J., 11 *Hen.* 4. 2, might have maintained trespass against the aggressor, *per quod servitium amisit.* The plaintiff, therefore, might possibly, in this case, if it were thought that the action could not be supported upon other grounds, be regarded as having been injured by the conduct of the defendant in the reversionary right which he had to the services of his son. We, however, think that, independent of this, the plaintiff, according to the reason and analogy of the law, as well as from the bearing of some of the authorities on the subject, was entitled to have from the court below the direction given to the jury in answer to the third point of the defendant.

The eleventh error is an exception to the opinion of the court in charging the jury, that the plaintiff could recover in this suit for his trouble and expense in prosecuting it. We have seen already that the loss of service is the true foundation of the action; so that if the plaintiff should make out his case by the evidence adduced, showing a loss of service arising from an injury done by the defendant, it would seem to follow as a necessary corollary, that he ought to recover in damages whatever sum may be requisite to compensate him for his loss occasioned by the conduct of the defendant. In order, then, to effect this, it may be that such compensation cannot be made without taking into the estimate the trouble and expense incurred by the plaintiff in prosecuting his suit. If they were left out of view by the jury, it might happen that, in many cases, the actual value of the loss of service might not be equal to the expense and trouble to which the plaintiff, perhaps unexpectedly, too, by the disputatious disposition of the defendant, is subjected in prosecuting his suit; consequently if he were only allowed damages equal to the amount of the actual loss of service, he, instead of being compensated, would be a loser, notwithstanding his just right to a re-

covery.   We are therefore of opinion there is no error in the charge
of the court to the jury on this point.

As to the twelfth error, which is the last, there is nothing in it.
It is not even worthy of notice.

Judgment affirmed.