ROGERS *v.* FALES.

A sheriff seizing goods in the possession of A., under an execution against B., cannot justify the trespass by an authority from the rightful owner, but the plaintiff will be entitled to nominal damages for the trespass to his possession.

If a husband has permitted his wife to acquire a separate estate in personal property by her own labour, or by a gift from himself or another, a *voluntary* assignee cannot impeach it as fraudulent; and the wife may pass the title by gift.

Damages recoverable in trespass.

IN error from the Common Pleas of Chester county.

*April 5.* This was an action against the sheriff for seizing and selling the personal property of the plaintiff. The defendant pleaded specially that the goods were not the property of the plaintiff, but of one Green; and that before the seizure, &c., said Green had made an assignment of all his goods, &c., in trust for his creditors; that plaintiff claimed title under colour of a gift, by the

wife of said Green, which was in fraud of his creditors; and that defendant seized the goods by the authority of the assignee being the lawful owner.

On the trial, the plaintiff proved the seizure of the goods when in her possession, under an execution against her mother, Sarah Fales. It appeared that the plaintiff's mother had a school in Kentucky, and desired the plaintiff to acquire the art of making shell-work vases, and work up some patterns, that she might become qualified to instruct others, for which purpose she sent her money. Before the plaintiff had completed the design, she left the country, and handed over the materials and unfinished work to her sister, the wife of Green, who continued to receive instructions and prepare patterns with money furnished in part by her mother, and partly by her husband. These patterns were made up into two vases, which were the property in question. After Green's assignment, and many ineffectual attempts to sell them to pay her own debts, Mrs. Green presented them to the plaintiff.

Green proved that there was an express understanding with the assignee that these vases were not included in the assignment, as they were the property of his wife, being connected with the school, and her mother having aided her in procuring them.

The assignee denied any such understanding, and proved that the seizure in this case was made at his instance and request, under the belief that he was the rightful owner, though the sheriff seized and sold ostensibly under the execution. This latter fact was also proved by the sheriff's deputy.

Green's assignment was of "all his household furniture, goods, chattels, and effects, and all his estate, personal and mixed, in Pennsylvania," in trust to pay certain specified creditors, and preceded the alleged gift, by his wife, to the plaintiff.

In consequence of the seizure of the goods, the plaintiff was delayed three weeks in prosecuting her intended removal, and put to expenses of journeys in attending to this business.

The court (BELL, P. J.) charged the jury as follows:

"There is no doubt the property in question was, at the time of the levy made by the defendant, as sheriff, in the possession of the plaintiff, Mary H. Fales. This possession is *primâ facie* sufficient to enable her to maintain this action of trespass against the defendant, and it lies upon him to show some legal justification of his acts in taking the property and removing it from the custody of the plaintiff.

"It is a general rule that the owner of chattels, or his agent, properly constituted, may take and possess himself of them wherever he can find them, provided that, in doing so, he commit no breach of the peace. The defendant here has, by his plea, endeavoured to invoke to his aid the benefit of this principle; but, under the circumstances that have place here, it is impracticable.

"That he took the goods described in the narr. as an officer of the law, and under and by virtue of the authority of an execution placed in his hands by the attorney of Benjamin Miles, and not as the private agent of any body, is, I think, beyond dispute. This is the character in which he acted, and he professed to take the goods as the property of Sarah K. Fales, and not as belonging to Henry K. Green, whose name does not appear to have been then mentioned in the transaction.

"But even admitting that the defendant had also the consent and direction of the true owner of the property in question, to take and carry it away, out of the possession of the plaintiff, he cannot justify himself, in this action, under such direction. He cannot be permitted to act professedly in his character of sheriff, and ostensibly by virtue of an execution against A., at the suit of B., and after thus effecting his purpose, throw off his official character, and aver that he took the property as belonging to C., and as the private agent of the real owner. To permit this would be to expose the possession by the party of a contested chattel, (which the law regards as an advantage,) to be changed and transferred to his antagonist, by the interference of any sheriff or constable, who, by a prostitution of his official power, and in the practice of a falsehood, might choose to lend himself to the execution of such a scheme. This would soon be felt as intolerable. A practice like this would be a fraud on the process of the law, such as the law will not permit. But from the evidence, the fact is clear that the sheriff, or his deputy, did not, in this instance, participate in such a transaction. In making the levy and sale, he did not act as the agent of the assignee of Green. Mr. Pennypacker, (the assignee,) says, that in giving his directions touching the execution of the writ in his hands, he had to do but with the deputy sheriff; and the latter testified that he acted throughout in his capacity of deputy sheriff, and in no other character. This is further shown by the written evidence of levy, and the return endorsed on the writ. Now this execution issued at the suit of Miles v. Sarah Fales. It is not now pretended she had any property in the goods in question. The defendant's full defence, founded upon supposed matter of justifi-

cation, therefore fails, and it follows the plaintiff in this action is
ent to recover some amount dam.
 what shall be the amo █f t damages? Upon this
poi██ he inquiry, who, at the t of t██ ██vy, was the real owner,
may be important.

"Generally, in these actions of trespass, where there are no spe-
cial circumstances of oppression or outrage committed by the
defendant, the measure of the damages is the value of the thing
taken, the object being to repay to the plaintiff so much as he may
have lost by the misconduct of the defendant. No such circum-
stance of outrage or oppression is alleged here.

"The first question then is, was Miss Fales, the plaintiff, the legal
owner of those vases at the time of their seizure by the defendant?

"If, on the 3d of January, 1842, the date of the assignment, those
vases were the property of Henry H. Green, they passed to the
assignee, under the general terms of the assignment, unless, indeed,
they were by special agreement or understanding, at and about the
time of its execution, excepted from its operation. Green had the
right, notwithstanding the general terms of his assignment, so to
except them, as he was entitled to give not only the law of the
trust, but to designate the property, which should be the subject of it.
I repeat, therefore, if there was an agreement and understanding
between assignor and assignee, before and at the time of the assign-
ment, that those vases should not pass to the assignee, they did not
so pass. Of this there is some evidence for your consideration.

"But again, if these vases were, as is alleged by the plaintiff, the
separate property of Mrs. Green, before and at the time of the
assignment, and so understood to be by the husband, they did not
pass under the assignment, for that conveyed only the personal pro-
perty belonging to the husband.

"As a general rule, personal property acquired by a wife passes
to and will belong to her husband, whether acquired before or sub-
sequent to the commencement of her coverture. But a married
woman may acquire a separate property in chattels, either by the
gift of a stranger or of her husband. So, where property is pur-
chased with the money, or created by the labour and industry of
the wife, though *primâ facie*, it would be subject to his marital
rights; yet he may consent that it shall be the property of his
wife, to be held as of her separate estate, and if he do so, it is freed
from his dominion. But the intent to create this separate property,
whether the gift be from a stranger or the husband, must be clearly
established.

O

" The kind and degree of proof to establish such separate property is much influenced and modified by the nature of the thing given. In the case of personal clothing, or articles of personal ornament, which are usually treated as the wife's, or pictures of her own painting or sketching, and similar articles, the mind would probably be satisfied with less evidence than in the case of an alleged gift of a horse, a plough, or a wagon. Now in this case we have the fact that the creation of the chattels in question was commenced under the auspices and direction of Mrs. Green's mother, and at her expense; that the original object having failed, the mother relinquished to the daughter all interest she might have in them; and I think, the proof is strong from the husband, that he always assented to it, and considered this property as the property of his wife.

" It is clear, that Mrs. Green considered these vases to be her property, and so constantly treated them.

" But it is a general rule, that no man can make gifts to members of his family at the expense of his creditors, the effect of which is to defeat and hinder them in the recovery of their just demands. This would generally be considered as a fraud in law, and void as against creditors in a contest between them and the wife. But an assignee for the benefit of creditors, does not represent them or stand in their shoes. Nor is he invested with their rights. He is the mere instrument of the assignor to make distribution of the fund; Vandyke v. Christ, 7 Watts & Serg. 373; Twelves v. Williams, 3 Whart. 492; Thompson v. Dougherty, 12 Serg. & Rawle, 448; Sherk v. Endress, 3 Watts & Serg. 255. He cannot call into question the conduct of his principal, in permitting his wife to appropriate to herself articles of ornament, whether personal or of furniture, before the assignment. But a pretended gift, made after the assignment, will not bind the assignee.

" If then, Mr. Green, before the assignment, agreed the property should be the separate property of his wife, and she subsequently, and before the committing of the trespass complained of, gave it to her sister, the plaintiff, of which last fact there is plenary proof, the latter may and ought to recover more than nominal damages.

" But if the vases were the property of Henry K. Green, not expressly excepted by him from the legal operation of the assignment as before stated, and were not the goods of his wife, and as such, given to the plaintiff as is here claimed; then, though this fact will not entirely protect the defendant in this action, the plaintiff should

recover no more than nominal damages; and with this qualification the defendant's third point is affirmed.

"If, however, you should believe, under the proof, that the vases were at the time of the commission of this trespass the property of the present plaintiff, either by the gift of Mrs. Green, or otherwise, then she is entitled to recover compensatory damages. The measure of these damages is generally, as already remarked, the true value of the things converted by the defendant. To this, the jury in their discretion may add, if they think the case demands it, a reasonable sum to compensate the plaintiff for any injury and vexation arising from the delay caused by the act of the defendant, as shown by the evidence, and to cover her reasonable costs incurred in vindicating her rights by action.

"In ascertaining the value of the goods sold by the defendant, the jury is not bound by the price which they brought at a forced judicial sale, and it may be in a bad market for such articles, unless they believe the price for which they were sold was the true value. Their actual value without regard to the sums for which they were finally knocked down, except so far as this tends to fix the value, is the true standard.

"Whereupon the said defendant did then and there except to so much of the said charge as is here given at large, and prayed the court to seal this his bill of exceptions, which is done accordingly."

The errors assigned were, in the charge as to the sufficiency of the evidence of a separate estate in Mrs. Green; the justification under the authority of the real owner; in submitting the question of the exception of the property from Green's assignment to the jury, and in the charge as to the damages.

*T. Sergeant*, for plaintiff in error, argued that there was no evidence of a separate property in Mrs. Green. [*Per Curiam.*—That is settled by the verdict of the jury.] The damages were excessive; such alone are allowed as grow directly out of the act complained of; no special damage was laid here in the declaration.

*Hemphill*, contrà.—The delay and consequent expense to which the plaintiff was put, was shown to be the immediate consequence of the illegal act of the defendant.

*April* 18. PER CURIAM.—Judgment affirmed for the reasons contained in the opinion of the judge who ruled the cause below.