NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CAPITAL TRANSIT COMPANY, Respondent.

No. 12259.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 4, 1955.

Decided Feb. 17, 1955.

---

3. 93 U.S.App.D.C. at page 181, 211 F.2d at page 39.

4. Ibid.

Mr. Arnold Ordman, Atty., National Labor Relations Board, of the bar of the Supreme Court of Massachusetts, pro hac vice, by special leave of Court, for petitioner.

Messrs. A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, and Bernard Dunau, Atty., National Labor Relations Board, were on the brief, for petitioner.

Messrs. Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, and James C. Hise, Atty., National Labor Relations Board, also entered appearances for petitioner.

Mr. O. R. McGuire, Jr., Washington, D. C., with whom Mr. Edmund L. Jones, Washington, D. C., was on the brief, for respondent.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

The National Labor Relations Board seeks enforcement of its June 16, 1953 order, requiring Capital Transit Company, a public transportation utility, to bargain collectively with a union [1] which the Board had certified as exclusive bargaining representative for certain designated employees. The Company challenges the certification on two grounds: (1) it was based upon an invalid election, and (2) the Board included "supervisors" within the bargaining unit.

Section 9(c) (3) of the National Labor Relations Act forbids an election within twelve months of an earlier "valid election." [2] Certification here

1. Division 689, Amalgamated Association of Street, Electric and Motor Coach Employees of America, A. F. of L.

2. In pertinent part, that subsection reads: "No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. * * *" 61 Stat. 144 (1947), 29 U.S. C.A. § 159(c) (3).

rests upon a successful union election held within only seven months after an unsuccessful one which the Board had set aside as invalid. The Company says the Board erred in determining that the earlier election was held in "an atmosphere incompatible with freedom of choice" by reason of a letter which the Company's president had sent to the employees.[3] We think the Board's view of the letter was reasonable and that its determination must therefore be upheld.[4] Since the earlier election was not a "valid election," the later one was not barred by § 9(c) (3).

More difficult is the issue relating to the Board's determination that the respondent's inspectors are not supervisors within the meaning of § 2(11) of the Act. That section defines a "supervisor" as one who has authority to "hire, transfer, *suspend*, lay off, recall, promote, discharge, assign, reward, or discipline other employees, *or responsibly to direct* them, or to adjust their grievances, or effectively to recommend such action, *if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.*"[5] The Company asserts that its inspectors are supervisors in that they have authority "to transfer, suspend, assign, reward, discipline and responsibly to direct other employees and effec-

tively to recommend such action."[6] It does not claim that they have authority to hire, lay off, recall, promote, discharge or adjust grievances of other employees. The Board found that the hiring, firing, assignment and disciplining of employees is handled through the Company's central personnel office and its division superintendents and supervisors. This finding is amply supported by the record.

The Board found that in extreme cases involving the public safety the inspectors are required to remove an operator from his vehicle. It did not find whether or not inspectors have authority to "suspend" operators. On the matter of authority of the inspectors "responsibly to direct" operators, the Board found that "The direction and control exercised by inspectors is concerned primarily with equipment rather than personnel, and any direction or control of personnel is incidental thereto * * * [and] not 'responsible direction' within the meaning of the Act." There is evidence in the record which indicates that the control exercised by inspectors relates primarily to equipment. It tends to show that the inspectors' primary function is to keep traffic rolling, in the event of tie-ups, by making ad hoc alterations of routes and schedules. To the extent that their direction of the operators is related to that function, (e.g., ordering opera-

---

3. Significant portions of the letter read as follows:

"* * * the Board issued an order holding that your duties were not supervisory * * *. In my opinion, the Board order was clearly wrong and contrary to the weight of the testimony offered at the hearing * * *. You know you cannot possibly properly perform your duties without exercising supervisory authority * * *. The Company feels so strongly that you are a supervisor that, despite the order of the Board, you will be treated as such unless we are told by the courts that we cannot continue to do so * * *. Has it occurred to you that the Union may want to represent you so that you will not be able to exercise supervisory authority and responsibility? * * * you must be sure to vote, for a failure to vote is almost the same as a

vote for the choice you do not want * * *."

4. "The propriety of the Board's determination that the election should be set aside must be considered in the light of the principle that 'Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees.'" National Labor Relations Board v. National Container Corp., 2 Cir., 1954, 211 F.2d 525, 532, quoting from National Labor Relations Board v. A. J. Tower Co., 1946, 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322. See also cases there cited.

5. 61 Stat. 138 (1947), 29 U.S.C.A. § 152 (11), emphasis supplied.

6. Brief for Respondent, p. 30.

tors to drive new routes), it might reasonably be viewed as incidental to their control over the movement of the vehicles.

But there is also evidence which indicates the existence of other inspector authority not so closely related to traffic control as to be merely incidental thereto. The Company's rule-book provides that an inspector may relieve from duty any operator found violating any rule in the manual or operating his vehicle in a reckless or dangerous manner.[7] Among the rules which the inspectors are thereby given authority to enforce are rules as to operators' personal appearance and uniforms;[8] as to their personal habits;[9] their use of boisterous, profane, or vulgar language;[10] smoking;[11] lack of courtesy toward the public;[12] and the like.

The Board failed to determine, as a matter of fact, the extent, if any, to which rule-book authority was actually exercised. Nor did it determine, as a matter of its own policy, the difference, if any, between the effect of actual and merely potential authority.[13] The Board's brief nevertheless states that "infrequent occasion to perform a supervisory function does not suffice to convert an otherwise rank-and-file employee into a supervisor."[14] With respect to authority to relieve an operator, the brief argues that the "incidence of its exercise is small and its relevance to the existence of effective supervisory authority in the inspector, if not nil, is neg-

ligible" and that "even if it could be thought to have a supervisory overtone," its exercise was too "sporadic or infrequent" to make the inspectors supervisors.[15] There is evidence in the record tending to support these reasons for the Board's action. The testimony of ten inspectors, representing about seventy man-years of service, shows that this authority was exercised most infrequently and that some of the inspectors seemed unaware that they even possessed it. But since the Board failed to make findings in connection with these reasons, "we cannot decide now whether [they] suffice to support the order."[16] "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."[17] Findings are essential not only to facilitate judicial review by revealing the factual basis for agency action but also to reflect the "determination of policy or judgment which the agency alone is authorized to make * * *."[18]

We conclude that this petition for enforcement of the Board's order must be denied and the case remanded to the Board for further findings upon the matters referred to above. Upon remand the Board may reopen the record for further hearings if it sees fit.

The Company filed a motion in this court for leave to adduce additional evidence before the Board on the issue whether the inspectors have supervisory authority. A petition for leave to adduce

---

7. Company Exhibit No. 6, Rules 132(b) and 238(b).

8. Id., Rules 30 and 31.

9. Id., Rule 37.

10. Id., Rule 50.

11. Id., Rule 43.

12. Id., Rules 50 and 51.

13. The Board made no finding whatsoever as to the relative frequency of exercise by the inspectors of their authority to relieve operators who violate Company rules. Indeed, its only finding on the subject of relieving operators from duty was that inspectors possess such authority "in ex-

treme cases involving the public safety such as operating a vehicle under the influence of alcohol."

14. Board's Brief, p. 24.

15. Board's Brief, pp. 23, 24.

16. Democrat Printing Co. v. Federal Communications Comm., 1952, 91 U.S.App. D.C. 72, 78, 202 F.2d 298, 303, and cases there cited.

17. Securities and Exchange Comm. v. Chenery Corp., 1943, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626.

18. Id., 318 U.S. at page 88, 63 S.Ct. at page 459.

the same additional evidence, filed with the Board after its decision, was denied for lack of sufficient showing to warrant relief. We think the principles which the Board applied are correct and also require denial of the present motion.[19] If the Board reopens the record upon remand, however, our denial should not be construed as precluding the Board from receiving any additional evidence it then deems appropriate.

The Board's order is set aside and the case remanded to the Board for further proceedings not inconsistent with this opinion.

Mr. Leon M. Shinberg; Washington, D. C., for appellant.

Mr. Marc A. White, Washington, D. C., with whom Mr. James R. Sharp, Washington, D. C., was on the brief, for appellee Cohen & Miller Advertising, Inc.

No appearance for appellee Washington Times-Herald, Inc.

Before EDGERTON, PRETTYMAN and BAZELON, Circuit Judges.

19. National Labor Relations Board v. Quincy Steel Casting Co., 1 Cir., 1952, 200 F.2d 293, 297. See Campbell v.

American Foreign S. S. Corp., 2 Cir., 1941, 116 F.2d 926, 928, certiorari denied 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530.